## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:13-cr-00442-M |
| | § | |
| | § | |
| JOSE LUIS BEDOY (1) | § | |

## DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AS TO ALL COUNTS OF THE INDICTMENT, OR, ALTERNATIVELY, FOR A NEW TRIAL

TO THE HONORABLE BARBARA M. G. LYNN, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION:

COMES NOW counsel of record for Jose Luis Bedoy ("Defendant"), Daniel K. Hagood, P.C., and Robert L. Webster of Fitzpatrick Hagood Smith & Uhl LLP, and respectfully files this Renewed Motion for Judgment of Acquittal as to all counts of the Indictment pursuant to Fed. Rule Crim. P. 29(c), or in the alternative, a Motion for New Trial pursuant to Fed. R. Crim. P. 33(b)(2); and in support thereof would show the Honorable Court the following:

## I.      Statement of the Case

On November 6, 2013, the United States Attorney's Office for the Northern District of Texas released an indictment (the "Indictment") against Defendant charging him in Counts One and Two with attempting to obstruct an official proceeding in violation of 18 U.S.C. § 1512(c)(2), Count Three with attempting to impair an object's integrity and availability for use in an official proceeding in violation of 18 U.S.C. § 1512(c)(1), and in Count Four with endeavoring to obstruct the of due administration of justice in violation of 18 U.S.C. § 1503. After a four-day trial, the jury found Mr. Bedoy guilty on all four counts.

Specifically, Count One alleges that:

On or about July 8, 2013, in the Dallas Division of the Northern District of Texas, Jose Bedoy, the defendant, did knowingly and corruptly attempt to obstruct, influence, and impede a United States Grand Jury investigation, an official proceeding, by telling Person A, a witness to the investigation, to leave Dallas and move somewhere else and by instructing Person A to never give her real name if she is pulled over in a traffic stop by law enforcement.

Count Two alleges that:

On or about July 11, 2013, in the Dallas Division of the Northern District of Texas, Jose Bedoy, the defendant, did knowingly and corruptly attempt to obstruct, influence, and impede a United States Grand Jury investigation, an official proceeding, by instructing Person A, a witness in the investigation, to not let anyone into her apartment to talk to her, including agents with the Federal Bureau of Investigation.

Count Three alleges that:

On or about July 14, 2013, in the Dallas Division of the Northern District of Texas, Jose Bedoy, the defendant, did knowingly and corruptly attempt to destroy and conceal an object, with the intent to impair its integrity and availability for use in an official proceeding, that is a United States Grand Jury investigation, by telling Person A, a witness in the investigation, to get rid of her cellular phone so that there is no connection between Person A and Bedoy.

Count Four alleges that:

On or about July 23, 2013, in the Dallas Division of the Northern District of Texas, Jose Bedoy, the defendant, did knowingly and corruptly endeavor to influence, obstruct and impede the due administration of justice in a United States Grand Jury investigation in the Northern District of Texas by falsely stating to agents of the Federal Bureau of Investigation that he, Bedoy, never directly gave Person A sensitive law enforcement information.

As detailed in the memorandum, the Government's evidence is insufficient to sustain a conviction on all counts of the Indictment.

## II.      Memorandum of Law

### A.  <u>Applicable Law</u>

In evaluating the merits of a motion for judgment of acquittal, the District Court is bound by the same principles that bind appellate courts. The test is whether a "reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Under this test, a court does not simply look at individual pieces of evidence; instead, it examines the evidence as a whole to determine if the government has proven the charges beyond a reasonable doubt. *See id.*

In its analysis, the Court may not consider whether the jury correctly determined guilt or innocence, but only whether the jury made a rational decision. *See id.* Under Federal Rule of Criminal Procedure 29, the authority of the Court is constrained in that it cannot evaluate the weight of the evidence nor the credibility of the witnesses. *See id.* (citing *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003).

However, if the evidence presented at trial gives equal or nearly equal circumstantial support to a theory of guilty and a theory of innocence, the Court should reverse the conviction. *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999).  In this case, there is an abundance of evidence—an equal or nearly equal quantum-- in the government tapes that Bedoy was motivated to act, and did act, in his self-interest or Person A's interest.  Specifically Bedoy repeatedly states that the FBI would never be involved in the investigative matter and that Person

A needed "to look out for herself."  Those conversations, demonstrating a trusting, open and

naïve demeanor, support an equally strong theory of innocence rather than a corrupt intent as

found by the jury. A District Court "has the duty to grant the motion for judgment of acquittal

when the evidence, viewed in the light most favorable to the government, is so scant that the jury

could only speculate as to the defendant's guilt." *United States v. Schuchmann*, 84 F.3d 752, 754

(5th Cir. 1996).

### B.  There is Insufficient Proof as a Matter of Law Establishing the Requisite Nexus Between Bedoy's Statements and a Record, Document, or Tangible Object—Counts One and Two

18 U.S.C. § 1512(c)(2), as charged in Counts One and Two, is a provision of the

Sarbanes-Oxley Act of 2002 designed for the protection of physical evidence. The section was

one of three added in response to the *Arthur Andersen* case for document shredding. *See Arthur*

*Andersen, LLP. v. United States*, 544 U.S. 696 (2005); 18 U.S.C. § 1512. The entire language of

1512(c) reads as follows:

> Whoever corruptly—
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or
>     attempts to do so, with the intent to impair the object's integrity or availability
>     for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or
>     attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).

Section 1512(c)(2) is the "catch all" that follows the prohibitions outlined in section

1512(c)(1) regarding physical records, documents, or other objects. To "violate section

1512(c)(2), the charged conduct must have some reasonable nexus to a record, document or

tangible evidence." *United States v. Singleton*, 2006 WL 1984467, *1, *3 (S.D. Tex. 2006); *United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (applying same principle to 18 U.S.C. § 1503).

In *Singleton*, the court found that the analogy applicable to section 1503 in *Howard* that the "'most natural construction of the second clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute'" applied to section 1512(c)(2) as well. *Singleton*, 2006 WL 1984467 at *3, *citing Howard*, 569 F.2d at 1333. While the tangible evidence need not be in existence prior to the prohibited conduct, a reasonable nexus is required with such evidence. *Singleton*, 2006 WL 1984467 at *3.

The Government charged Singleton with obstructing, influencing, and impeding official proceedings by providing false statements to outside attorneys that were used to create a written report that was subsequently submitted to governmental agencies conducting an investigation into price reporting to energy industry trade publications. *Id*. at *5. El Paso, the company, informed Singleton it had been subpoenaed for an investigation and that outside attorneys had been hired to gather information for government agencies conducting the investigation. *Id*. at *4. In denying Singleton's Motion to Dismiss, the District Court found that there was enough in the indictment to allege a reasonable nexus between Singleton's false statements to the attorneys and soon-to-exist tangible documents to be provided to government agencies. *Id*. However, during trial, the District Court did grant Singleton's Motion for Judgment of Acquittal, on related grounds, regarding the section 1512(c)(2) count. *United States v. Singleton*, 4:06-cr-080, Dkt. 91 (S.D. Texas July 31, 2006).

**No Reasonable Nexus Exists Between Bedoy's Actions and Any Tangible
Evidence in the Alleged Violations of 18 U.S.C. § 1512(c)(2)**

The Government neither alleged nor proved any nexus between the statements to Person A and tangible evidence or soon-to-exist tangible evidence. There is no evidence to prove that Bedoy's statements to Person A were made with the intent to obstruct, influence, or impede an official proceeding by influencing or coloring Person A's creation of any documents to be presented to the official proceeding, more specifically, the United States Grand Jury. The Government has failed in meeting its burden of establishing an essential element of the charges in Counts One and Two by not proving "a relationship in time, causation, or logic" between Bedoy's statements to Person A and tangible documents or records to be used in the Grand Jury investigation. *See Singleton*, 2006 WL 1984467 at *5; *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995).

Unlike the case in *Singleton*, Bedoy was reasonably unaware of any federal Grand Jury investigation and, additionally, clearly had no knowledge that his statements to Person A would be used in preparing or creating documents or records to be used in that official proceeding. In fact, the evidence has established that Bedoy's statements to Person A were to protect her from possible dangers of former colleagues and the threat of deportation if she was stopped by police officers or had any legal issues with authorities. These are not crimes that the Government alleged in Counts One and Two of the Indictment.

Thus, as a matter of law, the Government's charges on Counts One and Two must fail, and this Court should set aside the verdict and grant Defendant's Motion for Judgment of Acquittal as to Counts One and Two.

**C.** **Count Two Fails as a Matter of Law: The Defendant Did Not Act "Corruptly" in Advising Person A to Not Let Anyone in her Apartment—a Constitutionally Protected Right**

The Defendant was charged and convicted of a violation of 18 U.S.C. § 1512(c)(2), the "catchall" clause of the statute.  Research yielded no cases applying facts similar to this case to the propriety of a prosecution wherein a defendant was convicted of obstructive conduct for advising another of legal rights. Courts, including the Supreme Court, have addressed whether a defendant can be convicted of witness tampering under the companion §1512(b) for advising others of legal rights and are troubled or have determined that such conduct is not violative of that specific provision. The defendant submits that the analysis is *in pari materiae* and should comfort the Court in properly dismissing Count Two.

In *Arthur Andersen LLP v. United States*, the Supreme Court cautioned that the government and courts should use "restraint" where the act serving as a basis of conviction for a §1512(b) violation is "by itself innocuous." 544 U.S. 696,703 (2005). As in *Arthur Andersen,* Bedoy's advice to person A not to open her door for anyone including, as prompted by Person A, the FBI, is "not inherently malign." *Id.* at 704.  The Supreme Court also recited several examples of innocuous and constitutionally-consistent legal advice as non-actionable behavior.

> Indeed, "persuading" a person "with intent to . . . cause" that person to "withhold" testimony or documents from a Government proceeding or Government official is not inherently malign. Consider, for instance, a mother who suggests to her son that he invoke his right against compelled self-incrimination, see U.S. Const., Amdt. 5, or a wife who persuades her husband not to disclose marital confidences*, see Trammel v. United States*, 445 U.S. 40, (1980). Nor is it necessarily corrupt for an attorney to "persuade" a client "with intent to . . . cause" that client to "withhold" documents from the Government. In *Upjohn Co. v. United States*, 449 U.S. 383, (1981), for example, we held that Upjohn was justified in withholding documents that were covered by the attorney-client privilege from the Internal Revenue Service (IRS). *See id*., at 395. No one would suggest that an attorney who "persuaded" Upjohn to take that step acted wrongfully, even though he surely intended that his client keep those documents out of the IRS' hands.

*Id*. at 704.  That Court questioned whether any of the above circumstances should be considered as "knowing and corrupt" actions in rebuking the Fifth Circuit for its then broad interpretation of the mens rea element of §1512(b).  Their analysis is applicable and insightful to determining whether Bedoy should stand convicted of obstructive behavior in his fair rendering of a short course on Fourth Amendment protections to Person A.[1]

Of course, the Government can attempt to sidestep the import of the *Arthur Andersen* teaching points by urging that its holding is limited to document destruction and "corrupt persuasion" under §1512(b) terms.  However, the Government could have easily charged Bedoy's actions under the provisions of §1512(b)(3) and been clearly bound by the *Arthur Andersen* guidance. It would have been unfair gamesmanship to charge him under §1512(c) to attempt to preclude *Arthur Andersen* arguments.  Of course, it would be equally unfair not to apply *Arthur Andersen* logic to this case.  The Defendant asks that Count Two be dismissed.

### D.  <u>The Government Has Constructively Amended Count Three of the Indictment</u>

The Fifth Amendment provides for criminal convictions only on the basis of a grand jury indictment. *United States v. Doucet*, 994 F.2d 169, 172 (5th Cir. 1993); *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). Only the grand jury can amend the indictment or broaden it. *Doucet*, 994 F.2d at 172. "A constructive amendment occurs when the government changes its theory during trial so as to urge the jury to convict on a basis broader than that charged in the

---

[1]  The Ninth Circuit decided in *United States v. Doss*, 630 F.3d 1181 (9th Cir. 2011) , that a defendant writing letters to his wife encouraging her not to testify against him based on their marital status was not a violation of 1512(b) as not constituting witness tampering. The *Doss* court, relying on the *Arthur Andersen*  1512(c) guidance determined that Doss, who did not otherwise "corruptly" attempt to influence his wife not to testify though wrongful means, did not violate 1512(b).  *See*  Daniel Leddy, *Interpreting the Meaning of "Corruptly Persuades: Why the Ninth Circuit Got It Right in  United States v. Doss, 630 F.3d 1181 (9th Cir. 2011),*  92 Neb. L. Rev (2014). Found at:  http://digitalcommons.unl.edu/nlr/vol92/iss4/7/

indictment, or when the government is allowed to prove 'an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment.'" *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011); *United States v. Robles-Vertiz*, 155 F.3d 725, 728 (5th Cir. 1998). The amendment does not have to be explicit to constitute reversible error, but may be implicit or constructive. *United States v. Chambers*, 408 F.3d 237, 241 (5th Cir. 2005).

A constructive amendment of a charge in the indictment is reversible error *per se* because there has been a modification at trial of the elements of the crime charged. *Id*. The key inquiry is whether the defendant is tried for the same conduct for which he was indicted. *Robles-Vertiz*, 155 F.3d at 729. A constructive amendment cannot occur "where the indictment completely and accurately describes the conduct, so that the grand jury is not misled about the basis of the indictment." *United States v. Mikolajczyk*, 137 F.3d 237, 243 (5th Cir. 1998).

If the Government chooses to charge a section in a particular manner, it is bound by the specific allegations contained in the indictment—it cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged. *See Chambers*, 408 F.3d at 243. The Fifth Circuit has found constructive amendments in numerous cases where the government either alleged one theory of the case in the indictment, and then argued another at trial, or impermissibly broadened their argument to prove an essential element of the crime on an alternative basis permitted by the statute but not charged. *See id*.; *Douchet*, 994 F.2d at 17 (5th Cir. 1993); *United States v. Mize*, 756 F.2d 353, 355 (5th Cir. 1985); *United States v. McRary*, 665 F.2d 674, 679 (5th Cir. 1982); *United States v. Salinas*, 654 F.2d 319, 323-25 (5th Cir. 1981); *United States v. Bizzard*, 615 F.2d 1080, 1082 (5th Cir. 1980); *United States v. Davis*, 461 F.2d 83, 90-91 (5th Cir. 1971; *United States v. Salinas*, 601 F.2d 1279, 1287-91 (5th Cir. 1979).

**The Government Attempted to Prove an Essential Element on an Alternative Basis Not Charged in the Indictment.**

In relevant part, 18 U.S.C. § 1512(c)(1) prohibits altering, destroying, mutilating, or concealing "a record, document, or other object, or attempt[ing] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1). Bedoy was charged with "knowingly and corruptly attempt[ing] to destroy and conceal an object, with the intent to impair its integrity and availability for use in an official proceeding . . . by telling Person A, a witness to the investigation, to get rid of her cellular phone so that there [was] no connection between Person A and Bedoy."

The Government alleged one theory of the case in the indictment—Bedoy told Person A to get rid of her cellular phone so that there was no connection between her and Bedoy—but the evidence presented a different theory, that is, to merely change the number. The evidence and testimony presented by the Government established that Bedoy told Person A to change her phone by changing the cellular number, not by getting rid of the physical phone itself.[2] When Bedoy did say change "it" or "your phone," the context of the conversation proves that he was referencing Person A's phone <u>number</u>, not her phone.

Relevant portions of the Government's evidence is as follows:

| | |
|---|---|
| Bedoy: | You need to change it, so if |
| Person A: | Even this one? |
| Bedoy: | —because what can I do . . . |
| Person A: | Even this one? |
| Bedoy: | I cannot lie. I cannot lie about . . . if I have, if I have your phone and or if I called you. Is hey, what, you know? You have her phone, if someone were to ask me. . . Yeah, well, this is the number I—or they find out, well it's disconnected, okay. |

---

[2] Government Exhibits 41, 42.

| Person A: | So even the—but you, you think even this one, I just got it. Even this one? |
|---|---|
| Bedoy: | This one. Yeah, this one right here. I would do it. Cause I'm going to have a new number, so there will be no connection. There will be never . . . |
| Person A: | Okay. Yeah, so you don't get in trouble. They ask you "hey, do you know . . . and you don't lie, yeah, okay, I understand. |
| Bedoy: | I cannot—like if someone tells me hey you have her number and I say no, that's what's going to get me in trouble and it could have nothing to do with me. I cannot like be, you know what I mean. |
| Person A: | Yeah, and also I understand. I'm glad you gave me the heads up, because I don't need to . . |
| Bedoy: | So I'm telling you, you need to go ahead and do that to change it again. I'm going to have a new one and then so there is no link.[3] |

Later in the same conversation that led to the alleged charge in Count Three, the Government's evidence shows:

| Bedoy: | So I'm trying to tell you and I told you this before, I'm not telling you nothing new, I told you to move from the get-go, right, and I told you about changing the number, okay. So I'm trying to tell you—I'm telling you right now, change this number tomorrow, change it. |
|---|---|
| Person A: | Okay.[4] |

The government did not elicit any evidence to establish that Bedoy knowingly and corruptly attempted to destroy or conceal a physical object, in this case, Person A's cellular phone, with the intent to impair its integrity and availability for use in an official proceeding. While 18 U.S.C. § 1512(c)(1) contains language that allows potential charges for *altering* physical objects, the Government specifically charged destroying and concealing in the indictment, and that is the language it is bound by in these particular allegations—it cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged. *See Chambers*, 408 F.3d at 243.

---

[3] Government Exhibit 42, pgs. 33-35.
[4] Government Exhibit 42. pgs. 58-59.

Thus, the Government has impermissibly constructively amended Count Three, so Bedoy respectfully moves this Court to set aside the jury verdict and grant his Motion for Judgment of Acquittal as to Count Three.

### E.  The Government Has Failed to Prove an "Attempt" to Destroy or Conceal a Cellular Phone through a Mere Solicitation.

The government charged and the jury convicted the defendant of attempting to destroy or conceal Person A's cellular phone.  The evidence is clear and limited to the fact that the defendant merely solicited that Person A "change her phone." Even in a light most favorable to the verdict, at best, it amounts to a solicitation to violate § 1512(c)(1), not an attempt.

An attempt, as properly instructed to the jury, is "an act that constitutes a substantial step towards the commission of that crime and that strongly corroborates the defendant's criminal intent and amounts to more than mere preparation." *United States v. Redd*, 355 F.3d 866, 875 n.9 (5th Cir. 2003).  Here, the "substantial step" was lip service.

In this District in 1983, Judge Hill ruled in *United States v. American Airlines, Inc.,* that as a matter of law, a solicitation was not a step sufficiently substantial toward a commission of a crime as to support the lesser-included crime of attempt. 570 F. Supp. 654, 660-663 (N.D. Tex.1983).  That opinion was subsequently overturned by a Fifth Circuit decision that limited its holding to its application to "verbal crimes," in that case attempted monopolization.  *United States v. American Airlines, Inc.,*743 F.2d 1114, 1120-1121 (5th Cir. Tex.1984).  Here, Bedoy is alleged to have attempted the destruction of property, clearly not a verbal crime.

The Defendant submits that Judge Hill's opinion is still binding precedent in this District in cases involving mere solicitations for non-verbal crimes and Count Three should be dismissed. Alternatively, the Defendant urges the Court to recognize that there is no existing precedent

establishing that his actions, in a light most favorable to the verdict, constitute more than a mere solicitation to destroy or conceal an object and, as such, are insufficient evidence of attempt.

**F.** **The Government Has Failed to Prove the Requisite Nexus Between Defendant's Actions and the Federal Grand Jury Investigation in Count Four**

18 U.S.C. § 1503 is structured into two sections: the first part proscribes "specific conduct, while the second part, referred to as the 'omnibus clause,' is a 'catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice.'" *United States v. Richardson*, 676 F.3d 491, 502 (5th Cir. 2012)(citing *United States v. Aguilar*, 515 U.S. 593, 598 (1995)).

To prove a violation of the omnibus clause of section 1503, there are three core elements that the Government must establish: (1) there must be a pending judicial proceeding; (2) the defendant must have knowledge or notice of the pending proceeding; and (3) the defendant must have acted corruptly with the specific intent to obstruct or impede the proceeding in its due administration of justice. *United States v. Williams*, 874 F.2d 968, 977 (5th Cir. 1989). The Supreme Court has described the interplay between these three elements as the "nexus" requirement—"the act must have a relationship in time, causation, or logic with the judicial proceeding." *Aguilar*, 515 U.S. at 599. Further, in the context of section 1503, the Fifth Circuit has defined corruptly as "acting knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice." *See Richardson*, 676 F.3d at 506; Fifth Circuit Pattern Jury Instruction § 2.65 (2012). If the defendant lacks knowledge that his actions are likely to affect a judicial proceeding, as opposed to some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority, he lacks the requisite specific intent to obstruct. *See Aguilar*, 515 U.S. at 600.

Courts have stated that the endeavor must have the natural and probable effect of interfering with the due administration of justice. *Richardson*, 676 F.3d at 502 (citing *United States v. Aguilar*, 515 U.S. 593, 598 (1995)). The "due administration of justice" is defined as "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving truthful testimony when subpoenaed." *Williams*, 874 F.2d at 977 n. 24 (internal quotation marks omitted). Therefore, to obstruct the due administration of justice, one must "interfere with the procedure of a judicial hearing or trial." *Richardson*, 676 F.3d at 503.

In *Aguilar*, the Supreme Court held that uttering false statements to an investigating agent who might or might not be testifying before a grand jury is not sufficient to make out a violation of section 1503's prohibition of "endeavoring to influence, obstruct, or impede the due administration of justice." *Aguilar*, 515 U.S. at 600. Section 1503 requires "something more—specifically, a 'nexus' between the obstructive act and the proceeding." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005). If false statements are provided to an investigating agent who has not been subpoenaed or otherwise directed to appear before a grand jury, it is too speculative to affirmatively state that the statements have the "natural and probable effect" of interfering with the due administration of justice. *See Aguilar*, 515 U.S. at 601.

### The Government's Evidence is Insufficient to Sustain a Conviction that Bedoy Knowingly Provided False Statements to Influence, Obstruct, or Impede a Grand Jury Investigation

In this case, Defendant Bedoy is charged with knowingly and corruptly endeavoring to influence, obstruct, and impede the due administration of justice in a United States Grand Jury investigation in the Northern District of Texas by falsely stating to agents of the Federal Bureau of Investigation that he never directly gave a specific individual sensitive law enforcement

information. The alleged false statements occurred during a July 23, 2013 FBI meeting with

Bedoy when he was interviewed about his involvement with Person A. Pursuant to FBI policy,

the interview was not recorded, but a FBI agent took down notes from the interview and

generated a summary of the interview. The Government's evidence is insufficient to prove

beyond a reasonable doubt that, based on the information provided to Bedoy, he was aware his

statements to the FBI agent would unequivocally be used as evidence before a federal grand jury.

The FBI agent advised Bedoy of the initiation of a federal grand jury investigation, but did not

advise him that the interviewing FBI agent would in fact testify to a grand jury.

     The testimony of Special Agent Kevin Minor established Bedoy was unaware the agent

was going to testify before a grand jury and, further, that he was unaware that his statements to

the agent would be used as evidence before a grand jury. To that extent, Special Agent Minor

testified as follows:

> Q:     In your—in your warnings to Detective Bedoy**, do you tell him that you will be testifying before the grand jury?**
>
> A:     Did I tell him that?
>
> Q:     Yes.
>
> A:     **No.**
>
> Q:     **Did you tell him that the words he was saying to you would be placed before a grand jury?**
>
> A:     **No.**
>
> Q:     Did you tell him that you were an agent or going to testify before the grand jury?
>
> A:     No. I told him I was an agent but not that I was going to testify before the grand jury.
>
> Q;     You told him you were an FBI agent?
>
> A:     Yes, sir.
>
> Q:     **You never told him that the words he was uttering to you may find its way before a federal grand jury, true?**
>
> A:     **No, sir.**
>
> Q:     **That's not true or it is true?**

A:      **I never—I never told him that. That's what I'm trying to say, sir.**[5]

Q:      All right. At this point, though, you advised him he was the target of an FBI investigation, true?

A:      True.

Q:      Did not advise him he was a target of a federal grand jury investigation, true?

A:      Told him that he was the target of the investigation, yes, sir.

Q:      You told him—I'm reading this right here—"At this point in the interview, Bedoy was told he was a target of the FBI investigation."

A:      Which in essence was a grand jury investigation, yes, sir. Yes, sir, you're correct, that's true.

Q:      That's exactly what your wrote?

A:       Apology.

Q:      What you wrote, isn't it? And frankly, this could be an error. You might have said that, but you didn't write that down, did you?

A:      No, sir. That's what I told him.

Q:      You told him, "At this point in the interview, Bedoy was advised that he was a target of the FBI investigation."

A:      Yes, sir.

Q:      **All right. You didn't say he was the target of a federal grand jury investigation.**

A:      **No, sir.**[6]

*United States v. Aguilar* is directly on point. In *Aguilar*, District Court Judge Aguilar was

convicted of violating section 1503 by lying to FBI agents during an interview for a pending

federal grand jury investigation. *See Aguilar*, 515 U.S. at 597. Before the Supreme Court, the

Government argued that Aguilar's statements were "analogous to those made directly to the

grand jury itself, in the form of false testimony or false documents." *Id.* at 601. However, the

Court upheld the Ninth Circuit's reversal of Aguilar's conviction because, during the interview,

the FBI informed Aguilar that a grand jury was convening, not that the investigating agent would

testify. *Id.* at 600. The court "did not believe that uttering false statements to an investigating

agent . . . who might or might not testify before a grand jury is sufficient to make out a violation

---

[5] Transcript of Excerpt from Jury Trial Cross, Re-direct, and Re-cross Examination of Kevin Minor 29:7-30:1 [hereinafter Minor Transcript].
[6] Minor Transcript 30:17-31:15.

of the catchall provision of § 1503." *Id*. Further, the Court stated that false testimony is far too speculative and cannot "be said to have the 'natural and probable effect' of interfering with the due administration of justice" if given to an investigating agent who has not been directed to appear before the grand jury. *See id*. at 601.

Just as was the case in *Aguilar*, the FBI agent did not inform Bedoy that his testimony would be used in a grand jury proceeding nor that the agent was to testify before the grand jury; Bedoy was only advised of a pending grand jury investigation. Thus, it is too speculative that the statements provided by Bedoy to the FBI agents would have the "natural and probable effect of interfering with the due administration of justice." *See id*. The Government has failed to present sufficient evidence to sustain a conviction that Bedoy knowingly endeavored to influence, obstruct, and impede the due administration of justice in a United States Grand Jury investigation; therefore, the jury verdict should be set aside and Bedoy's Motion for Judgment for Acquittal as to Count Four should be granted.

### The Government's Evidence is Insufficient to Prove Bedoy Corruptly Provided False Statements With the Intent to Obstruct and Impede an Official Proceeding

The Government's evidence is insufficient to sustain a conviction that Bedoy "acted knowingly and dishonestly with the specific intent to subvert or undermine the due administration of justice." *See Richardson*, 676 F.3d at 506; Fifth Circuit Pattern Jury Instruction § 2.65 (2012). As stated previously in a light most favorable to the government, Bedoy only knew of a pending grand jury investigation, not that his statements provided during a FBI interview would be used as evidence during a grand jury proceeding.

Because Bedoy provided his statements to the FBI during its ancillary investigation, he did not have any knowledge that his actions were likely to affect a judicial proceeding; therefore,

Bedoy lacked the requisite specific intent to obstruct the due administration of justice. *See Richardson*, 676 F.3d at 502; *Aguilar*, 515 U.S. at 600. The Government's evidence has not established that Bedoy's actions "have a relationship in time, causation, or logic" with the grand jury proceeding, and as a result, the Government cannot meet the "nexus" requirement of 18 U.S.C. § 1503. *See Aguilar* 515 U.S. at 599. Since the Government's evidence is not sufficient to establish the requisite "nexus" necessary for a conviction, this Court should set aside the verdict and grant his Motion for a Judgment of Acquittal as to Count Four.

### As Applied, 18 U.S.C. § 1503 is Unconstitutionally Vague

A statute is unconstitutionally vague if it fails to satisfy two basic elements. Under the void-for-vagueness doctrine, the statute must first "define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402-03 (2010). The Supreme Court has held that "no one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. State of New Jersey*, 306 U.S. 451, 453 (1939).

Second, the statute must define the prohibited conduct "in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling*, 561 U.S. at 402-03. While the doctrine encompasses both actual notice to citizens and arbitrary enforcement, the more important aspect is "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). In the absence of "such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen,

prosecutors, and juries to pursue their personal predilections." *Id.*; *Smith v. Goguen*, 415 U.S. 566, 575 (1974).

Courts have been instructed that, if such a construction is fairly possible, to "avoid constitutional difficulties by adopting a limiting interpretation." *Skilling*, 561 U.S. at 406. A statute will not be struck down as vague if "the general class of offenses to which the statute is directed is plainly within its terms." *Id.*; *United States v. Harriss,* 347 U.S. 612, 618 (1954). If a reasonable construction of the statute can make the general class of offenses constitutionally definite, "[c]ourts are under a duty to give the statute that construction." *Harriss*, 347 U.S. at 618. Vagueness challenges to "statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

### As Charged in the Indictment and Presented at Trial, "Sensitive Law Enforcement Information" Cannot be Reasonably Construed

The term "sensitive law enforcement information" is not defined within the statute, nor is its meaning settled in any related statute or case law. In fact, courts have concluded on multiple occasions that this term is "imprecisely defined." *See Parhat v. Gates*, 532 F.3d 834, 853 (D.C. Cir. 2008); *In re Guantanamo Bay Detainee Continued Access to Counsel*, 968 F. Supp. 2d 222, 225 (D.D.C. 2013). One district court noted that "imprecisely defined categories of information, like 'Law Enforcement Sensitive' information . . . leave the court unable to determine whether the information the Government has designated for protection properly falls within the categories it has described." *In re Guantanamo Bay Detainee*, 968 F. Supp. 2d at 255. Further illustrating the utter lack of a definition for this term, the D.C. Circuit pointed out "law enforcement sensitive is such an imprecise term; at least seven different federal agencies define it differently."

*Parhat*, 532 F.3d at 853; U.S. GOVERNMENT ACCOUNTABILITY OFFICE, GAO 06-385,

*Information Sharing: The Federal Government Needs to Establish Policies and Processes for*

*Sharing Terrorism-Related and Sensitive but Unclassified Information* 24 (2006).[7]

     If various federal agencies are so divided with respect to the meaning of a particular term

that they employ ten different definitions of it, an ordinary person certainly cannot be expected to

understand the meaning of that term. *See Skilling*, 561 U.S. 402-03. Such is the case here.

---

[7] As contained in the report, the following ten departments have defined "Law Enforcement Sensitive:"

1. Bureau of Alcohol, Tobacco, Firearms, and Explosives: "Designation is used for information that, if disclosed, could adversely affect the ability of ATF/NDIC to accomplish its mission."
2. Centers for Disease Control and Prevention: "Designation is used for law enforcement purposes. Information that could reasonably be expected to interfere with law enforcement proceedings, would deprive a person of a right to a fair trial or impartial adjudication, could reasonably be expected to constitute an unwarranted invasion of personal privacy of others, disclose the identities of a confidential source, disclose investigative techniques and procedures or could reasonably be expected to endanger the life or physical safety of any individual is to be marked law enforcement sensitive."
3. Department of Commerce: "The designation is used for information pertaining to the protection of senior government officials; investigative data."
4. Department of Defense: "Designation is used for certain information compiled for law enforcement purposes that should be afforded appropriate security in order to protect certain legitimate government interests."
5. Department of Homeland Security: "Designation is not formally defined by a DHS policy, directive, or regulation. In practice, according to DHS, law enforcement components apply the designation to information that may be exempt from disclosure under exemptions 2 or 7 of the Freedom of Information Act."
6. Department of Justice (US Marshals Service): "Designation is used for unclassified information of a sensitive and proprietary nature that if disclosed could cause harm to law enforcement activities by jeopardizing investigations, comprising operations, or causing life-threatening situations for confidential informants, witnesses, or law enforcement personnel."
7. Environmental Protection Agency: "Designation is used for records or information compiled for law enforcement purposes, including information that relates to investigative procedures and grand jury information. It aligns with the definition of FOIA exemption 7 (records or information compiled for law enforcement purposes)."
8. Federal Bureau of Investigation: "Designation is used to protect information compiled for law enforcement purposes. LES is a subset of For Official Use Only, defined as used for information that may be exempt from mandatory release to the public under FOIA."
9. Office of Inspector General: "Designation is used for investigative information involving the progression of a case from intelligence gather through the referral for prosecution."
10. Office of Personnel Management: "Designation is use for unclassified information used by law enforcement personnel and requires protection against unauthorized disclosure to protect the sources and methods of investigative activity, evidence, and the integrity of pretrial investigative reports."

As charged in the Indictment, the language of section 1503 cannot be reasonably construed because it fails to define an offense with sufficient specificity to allow Bedoy, an ordinary person, to understand what conduct is prohibited. *Id*. Additionally, this statute fails to establish an objective standard for enforcement sufficient to prevent arbitrary and discriminatory enforcement. The statute in question imposes criminal liability on anyone who "corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice." 18 U.S.C. § 1503(a). This language is not sufficient to alert an ordinary person that they may face criminal liability for stating to an FBI agent that they did not give "sensitive law enforcement information" to another individual. Testimony at trial by the Government's witness Deputy Chief Christina Smith established that there is no definition of "sensitive law enforcement information" to be found in Dallas Police Department handbooks or procedure manuals. This evidence does nothing more than further show that the Government cannot prove that Bedoy, as an ordinary person, was alerted to the fact he may fact criminal liability for answering, "No," to a question from a federal agent. To this extent, Special Agent Minor testified as follows:

> Q: The question is this: When you spoke to Officer Bedoy, or Detective Bedoy at the time, there was not a common definition of the phrase "law enforcement sensitive information" that was used by both the Dallas Police Department and the FBI?
>
> A: I don't know how Dallas Police Department characterizes it. I do know how the FBI characterizes it, sir.
>
> Q: And did you say to Detective Bedoy, "Here is the definition of 'law enforcement sensitive information,' Detective Bedoy. This is what I mean when I use that phrase with you?" Did you say that to him?
>
> A: Excuse me. No, sir.
>
> Q: **You never defined what you meant by "law enforcement sensitive information," did you?**
>
> A: **No, sir, I didn't believe I had to.**

Q;    **Well, the indictment says you do. You have the burden of proof, don't you?**

A:    **Yes, sir, we do.**[8]

Q:    **Right. And so you never defined the very phrase that you—Mr. Bedoy is indicted for—was not defined by you when you interrogated him, was it?**

A:    **No, sir.**[9]

Thus, section 1503, which was allegedly violated by Bedoy's false statement regarding whether he "gave Person A sensitive law enforcement information," has certainly not been stated with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling*, 561 U.S. at 402-03. As Count Four has not be stated with sufficient definiteness, no reasonable juror could find beyond a reasonable doubt that Bedoy is guilty of violating 18 U.S.C. § 1503 as charged in the Indictment.

Additionally, this broad language lends itself to arbitrary and discriminatory enforcement, particularly when the alleged illegality of the act is dependent upon the meaning of a phrase given the fact that "sensitive law enforcement information" is a category that is predominantly determined by federal agents and law enforcement officers. *Id.* "Sensitive law enforcement information" is not only lacking a commonly accepted definition, but the sole party charged with defining it on a routine basis is generally the one that has the authority to arrest individuals. Examined in light of the facts of this case and through the evidence presented by the Government, the statute "vests virtually complete discretion in the hands of the [agents] to determine whether the suspect has [violated] the statute." *Kolender*, 461 U.S. at 358; *Mazurie*, 419 U.S. at 550. As such, there is a lack of minimal guidelines for the court to follow which

---

[8] Minor Transcript 61:19-62:12.
[9] Minor Transcript 63:23-64:1.

permits a "standardless sweep that allows [agents], prosecutors, and juries to pursue their personal predilections." *Kolender*, 461 U.S. at 358.

To allow Bedoy to face criminal charges for stating that he did not directly give "sensitive law enforcement information" to a particular individual violates Bedoy's due process rights until and unless the term "sensitive law enforcement information" is defined. As shown by the Government's evidence, there is no such definition. Consequently, as charged and applied in Count Four the Indictment, 18 U.S.C. § 1503 is unconstitutionally vague; therefore, as a result, this Court should set aside the jury verdict and grant Defendant Bedoy's Motion for Judgment of Acquittal.[10]

### G. In the Alternative, Bedoy Requests a New Trial

If the Court denies Defendant Bedoy's Renewed Motion for Acquittal as to all counts of the Indictment, he respectfully requests that the Court grant his Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33(b)(2).

**Applicable Law**

The Court has authority to vacate a judgment of guilt returned by a jury and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. The Fifth Circuit has indicated that motions for new trial based on the interest of justice are divided into two different subcategories: (1) motions based on newly discovered evidence; and (2) motions based on "other grounds." *See United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). The instant motion is

---

[10] Defense also asserts that "directly" is not sufficiently defined such that Defendant, as an ordinary person, is aware that the manner of his alleged conduct was, in fact, illegal. As defined by Black's Law Dictionary, "directly" means (1) in a straightforward manner, (2) in a straight line or course, or (3) immediately. *See Black's Law Dictionary* (9th ed. 2009) *available at* Westlaw BLACKS. Based on these definitions, Defendant Bedoy did not "directly" give Syndia Guerbi "sensitive law enforcement information."

based on "other grounds." The distinction between these two subcategories is important for, among others, the following reasons.

First, the Fifth Circuit has stated that motions based on newly discovered evidence are disfavored and they are reviewed with great caution. *See United States v. Ebron*, 683 F.3d 105, 157 (5th Cir. 2012). In contrast, motions for new trial based on other grounds are "neither favored nor disfavored, and the question is what the interest of justice requires." *See United States v. Scroggins*, 379 F.3d 233, 255 (5th Cir. 2004), *vacated on other grounds by* 544 U.S. 1112 (2005) (quoting 3 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 551 (3d ed. 2004)).

Second, motions for new trial based on newly discovered evidence are subject to what the Fifth Circuit refers to as "an unusually stringent test." *See Scroggins*, 379 F.3d at 255. That is, in order to obtain a new trial based on newly discovered evidence, a defendant has the burden of showing the following:

> (1) the evidence is newly discovered and was unknown to defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of due diligence on the part of the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.

*United States v. Franklin*, 561 F.3d 398, 405 (5th Cir. 2009) (quoting *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001)). However, motions for new trial based on other grounds are not subject to such a "stringent test." *See Scroggins*, 379 F.3d at 255.

The Fifth Circuit has made it clear that "[i]n determining whether to grant the motion, the district court must carefully weigh the evidence and may assess the credibility of the witnesses." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (citing *United States v. Robertson*,

110 F.3d 1113, 1117 (5th Cir. 1997)). The power to conduct an independent assessment of the weight of the evidence and the credibility of the witnesses is probably the most remarkable difference, in terms of the trial court's authority to act, between a motion for acquittal and a motion for new trial. *See Robertson*, 110 F.3d at 1117.

The trial court's own evaluation of the weight of the evidence and the credibility of the witnesses is subject to great deference because, unlike the appellate court, the district court has the opportunity to see and hear first-hand the evidence and evaluate its importance to the case. *United States v. Sipe*, 388 F.3d 471, 492 (5th Cir. 2004). A reviewing court will defer to the trial court's determination, even if the reviewing court feels "skeptical" about the trial court's ruling. *United States v. Baytank*, 934 F.2d 599, 618 (5th Cir. 1991). The ultimate question an appellate court must answer is whether the district court's decision in granting the new trial constituted a clear abuse of discretion. *Tarango*, 396 F.3d at 672.

The Fifth Circuit has unequivocally stated that the trial court has "considerable discretion" when ruling on a motion for new trial. *United States v. Shugart*, 117 F.3d 838, 847 (5th Cir. 1997). The trial court's decision to grant a new trial, in the interest of justice, does not have to be predicated on "actual innocence." Moreover, the trial court's decision to grant a new trial does not even have to be based on specific and identifiable legal errors that may have been committed during the trial. *See Scroggins*, 379 F.3d at 253. In fact, no written reasons upon the decision to grant a motion for new trial are required under Rule 33. *See Baytank*, 934 F.2d at 617.

The trial court is permitted to vacate a jury's guilty verdict and grant a new trial, in the interest of justice, if the court finds it would be a "miscarriage of justice" to let the verdict stand.

Such a situation where the Court has found a new trial may be warranted in the interest of justice is when the evidence preponderates against the verdict. *See Tarango*, 396 F.3d at 672; *see also Wall*, 389 F.3d at 466.

### The Court Should Grant a New Trial in the Interest of Justice

In this case, it would be a miscarriage of justice to let the verdict stand against Defendant Bedoy. As detailed previously in the memorandum, and reincorporated entirely herein, the evidence substantially preponderates against the verdict on all counts.

First, the evidence presented by the government does not establish beyond a reasonable doubt that Bedoy's actions in Counts One, Two, and Three were with the intent to obstruct an official proceeding, specifically, a federal grand jury investigation. One of the government's main witnesses to the key events leading to these charges was shown to be not credible while the other witness was not even called to the witness stand. The government relied on recordings between Bedoy and these two individuals to show that Bedoy knew or foresaw the likelihood of a federal grand jury proceeding, and, these conversations taken as a whole, a reasonable juror could not find guilt beyond a reasonable doubt.

The government used Special Agent Minor to introduce recordings from, Brenda Mazzei, the witness the government refused to call. The Defendant maintains that any introduction of such statements by Mazzei, including her consent to any telephonic recordings, were testimonial in nature and in violation of Defendant's Sixth Amendment right to confront witnesses against him as mandated in *Crawford v. Washington*. 541 U.S. 36 (2004). The consent form she completed and statements made to the FBI regarding her understanding and voluntariness of her consent were clearly statements obtained to be available for use at a later trial and were

testimonial in nature. Bedoy was not afforded an opportunity to cross-examine Mazzei regarding her consent to the FBI recording her phone calls to him. Such a violation of the Confrontation Clause is a miscarriage of justice and should result in a new trial.

In Count Four, the government's evidence does not establish beyond a reasonable doubt that Bedoy had knowledge of a pending federal grand jury investigation, or that he knew when he responded, "No," to a question regarding whether he gave Syndia Guerbi "sensitive law enforcement information," he was endeavoring to obstruct the due administration of justice. The FBI failed to inform Bedoy that his testimony would be used in a grand jury proceeding or that the agent was to testify before the grand jury, but merely that a grand jury investigation was pending. Thus, it is too speculative that the statements provided by Bedoy to the FBI agents would have the "natural and probable effect of interfering with the due administration of justice." *See Aguilar*, 515 U.S. at 601. Speculation on the part of the jury as to Bedoy's statements cannot give rise to beyond a reasonable doubt. Based on the totality of the evidence presented by the government, it preponderates against the jury's verdict; therefore, this Court, in the interest of justice, should grant Defendant Bedoy's request for a new trial.

Further, Defendant Bedoy submits that this Court should grant a new trial based on improper argument by the Government. During the hearing for an emergency continuance on October 2, 2014, Assistant United States Attorney Errin Martin represented to the Court and Defendant that the Government, through Guerbi, was not alleging Bedoy extorted Guerbi, but rather that Guerbi was the manipulator.[11] Contrary to these representations, AUSA Martin

---

[11] Hearing on Motion for Continuance Transcript, pg. 15:19-25.

ttempted to elicit testimony from Guerbi during trial that she was, in fact, a victim of extortion. AUSA Martin's misrepresentations to the Court in the hearing amounted to improper argument.

During closing argument, AUSA Martin again improperly argued the theory that Guerbi was a victim of Bedoy's extortion. During trial, defense counsel brought this matter before the Court, but was overruled, thus it was futile to renew the objection during the Government's closing argument.  This improper argument was extremely prejudicial to Defendant and not in accord with the Government's representations to the Court during the continuance hearing nor with the evidence presented at trial. A prosecutor may use their closing argument only to 'assist the jury in analyzing, evaluating, and applying the evidence." *United States v. Delgado*, 631 F.3d 685, 701 (5th Cir. 2011) (citing *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978). AUSA Martin improperly argued about evidence that was not presented at trial through the testimony of Guerbi, and such argument should not have been before the jury. Based on these improper arguments, the Court should grant a new trial to avoid a miscarriage of justice.

### H. Conclusion

The Government's evidence is insufficient to sustain a conviction of Bedoy as charged in the indictment on all Counts because: (1) as a matter of law, Bedoy cannot be convicted under 18 U.S.C. 1512(c)(2) in Counts One and Two as his statements did not have a reasonable nexus to any existing or soon-to-be existing tangible documents or records; (2) the Government constructively amended Count Three by modifying an element of the conduct charged; (3) the Government failed to establish the "nexus" requirement of 18 U.S.C. § 1503 in order to convict Bedoy; and (4) the Government failed to prove that "sensitive law enforcement information" has been defined in such a way that Bedoy reasonably knew the allegations he was being charged

with. The jury verdict should be set aside and a judgment of acquittal granted as to all counts.

Alternatively, it would be a miscarriage of justice to let the verdict stand; therefore, in the

interest of justice, a new trial should be granted.

WHEREFORE, the above premises considered, the Defendant, Jose Luis Bedoy,

respectfully requests that the Court grant his Motion for Judgment of Acquittal as to all counts of

the Indictment, or, alternatively, his Motion for New Trial.

Respectfully submitted,

**FITZPATRICK HAGOOD SMITH & UHL, LLP**

/s/ Daniel K. Hagood
**DANIEL K. HAGOOD, P.C.**
FITZPATRICK HAGOOD SMITH & UHL LLP
2515 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 237-0900 Phone
(214) 237-0901 Fax
Texas State Bar #08698300
dhagood@fhsulaw.com

and,

/s/ Robert L. Webster
**ROBERT L. WEBSTER, P.C.**
FITZPATRICK HAGOOD SMITH & UHL LLP
2515 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 237-0900 Phone
(214) 237-0901 Fax
Texas State Bar #21053375
rwebster@fhsulaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I, Daniel K. Hagood, P.C., certify that on the 31st day of October, 2014, this motion was filed using the electronic case filing system for the Northern District of Texas which provides for service to the counsel for the United States.

                      /s/ Daniel K. Hagood
                      Daniel K. Hagood, P.C.